IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSEPH W. BENDER, et al.,

      Plaintiffs,

    v.                        Case No. 19-CV-29

STATE OF WISCONSIN, et al.,

      Defendants.

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

---

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND .................................................................................................3

    I.    Wisconsin's State Public Defender's Office provides representation to indigent criminal defendants. ...........................3

    II.    Efforts are ongoing to raise compensation rates for private attorneys who represent indigent criminal defendants. ...............6

    III.    Plaintiffs allege that Wisconsin's indigent defense system fails to meet minimum constitutional standards of representation. ..................................................................................8

LEGAL STANDARD.........................................................................................9

ARGUMENT .................................................................................................. 10

    I.    This Court must abstain from exercising federal jurisdiction over Plaintiffs' challenge to Wisconsin's public defender system.................................................................................... 10

        A.    *Younger* and its progeny require federal courts to abstain from reforming state criminal proceedings........... 10

        B.    Federal courts abstain under *Younger* from considering systematic challenges to state public defender systems................................................................ 13

        C.    *Younger* requires this case to be dismissed........................ 17

    II.    This Court lacks jurisdiction over Plaintiffs' claims due to the Eleventh Amendment, a lack of Article III standing, and *Heck*. ....................................................................................... 20

        A.    The Eleventh Amendment prevents a federal court from hearing Plaintiffs' claims........................................... 20

            1.    Defendants enjoy Eleventh Amendment immunity from suit in federal court. ........................ 21

                a.    State of Wisconsin............................................ 21

b.  Governor Evers ................................................. 22

c.  Kelli Thompson ................................................ 24

2.  The Eleventh Amendment requires dismissal of Plaintiffs' state law claims. ........................................ 25

B.  Plaintiffs' claims must be dismissed because they lack Article III standing. ............................................... 26

1.  Defendants neither caused nor can redress Plaintiffs' alleged injuries........................................... 27

2.  Plaintiffs lack standing to challenge aspects of the public defender program that have not allegedly harmed them. ............................................. 28

C.  *Heck* requires Plaintiffs' claims to be dismissed because, if successful, they would imply the invalidity of state criminal convictions................................................. 30

III.  Plaintiffs fail to state a claim for damages.................................... 33

A.  Defendants are not "persons" under 42 U.S.C. § 1983 for purposes of damages claims. ......................................... 33

B.  Plaintiffs identify no state cause of action for damages. ................................................................ 34

CONCLUSION................................................................. 35

## INTRODUCTION

Plaintiffs—twelve indigent criminal defendants in Wisconsin state court—request sweeping reform and oversight of Wisconsin's state public defender system by a federal court, but this is not the right forum for their claims. As a remedy for Wisconsin's purported failure to provide indigent criminal defendants with effective legal representation, Plaintiffs ask this Court to use its equitable powers to effectively assume control over the Wisconsin State Public Defenders Office (SPD). They request a far-reaching injunction that will modify "the structure and operation of the State's indigent defense system," "implement a statewide system of public defense that is consistent with the U.S. Constitution and the Constitution and laws of the State of Wisconsin," and regulate public defenders' "workload and performance" including by "establishing minimum standards of courtroom experience or mentorship." (Dkt. 10:25.) After this Court fundamentally transforms Wisconsin's public defender system, Plaintiffs ask this Court to "monitor[]" the new system for the indefinite future. (Dkt. 10:25.)

But Plaintiffs cannot use federal court to reform Wisconsin's public defender system. Under *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny, federal courts may not grant equitable relief against state officials that would transform state criminal processes and impose ongoing federal court supervision of those reforms. That is exactly what Plaintiffs seek: structural

reform and auditing of Wisconsin's public defender system. Every federal court that has considered similar—in fact, much more modest—requests to reform state public defender systems has abstained under *Younger*, when asked. Plaintiffs' complaint here must share the same fate.

Although *Younger* provides reason enough to dismiss this case, Plaintiffs' claims also have three jurisdictional defects.

First, this Court lacks jurisdiction over Plaintiffs' state-law claims, because the Eleventh Amendment bars granting equitable relief against state officials based on alleged violations of state law. The Eleventh Amendment also bars federal claims against the State of Wisconsin, Governor Evers, and State Public Defender Thompson in their official capacities, and Plaintiffs do not allege sufficient facts to support an *Ex parte Young* claim for equitable relief against the individual defendants, either.

Second, Plaintiffs' claims also fail to satisfy Article III standing requirements. They theorize that inadequate funding for indigent defense counsel results in various constitutional deprivations. But none of the defendants here have authority over SPD funding—only the Wisconsin Legislature has that power. Since Defendants did not cause and cannot redress Plaintiffs' alleged injuries, Plaintiffs lack standing to sue them. Moreover, the only alleged harm Plaintiffs have suffered is waiting too long for appointed

counsel, which means they lack standing to challenge other aspects of Wisconsin's public defender system.

Third, *Heck v. Humphrey*, 512 U.S. 477 (1994) prohibits federal courts from granting relief in civil cases that would imply the invalidity of state criminal convictions. Plaintiffs' ineffective assistance of counsel and speedy trial allegations, if successful, would necessarily imply the invalidity of any state criminal convictions they might receive, thereby violating *Heck*.

Plaintiffs also fail to state a claim for damages. Under 42 U.S.C. § 1983 they cannot sue the State of Wisconsin, nor Governor Evers or State Public Defender Thompson since they are named in their official capacities. Plaintiffs also do not identify any state law cause of action for damages.

Plaintiffs' complaint must be dismissed.

## BACKGROUND

### I.   Wisconsin's State Public Defender's Office provides representation to indigent criminal defendants.

SPD is a statewide, independent, executive agency that was created to represent indigent criminal defendants and meet Wisconsin's obligations under *Gideon v. Wainwright*, 372 U.S. 335 (1963). SPD provides representation to indigent individuals in two ways. First, some indigent defendants receive representation from staff counsel that SPD directly employs. Wis. Stat. §§ 977.05(4)(i), 977.08(3)(d). Second, SPD delegates the representation of some

indigent defendants to private members of the Wisconsin Bar. Wis. Stat. § 977.05(5)(a). This latter method typically occurs when SPD staff attorneys cannot assume a representation due to either resource constraints or a conflict of interest (which often occurs in multi-defendant cases).[1]

To find private counsel for indigent defendants, SPD first asks attorneys in each Wisconsin county to sign up on a list of attorneys willing to represent indigent defendants. Wis. Stat. § 977.08(2). SPD must update those lists annually. Wis. Stat. § 977.08(3)(b). When SPD needs to find a private attorney to represent an indigent defendant, it typically contacts private attorneys on this list. Wis. Stat. § 977.08(3)(c). SPD also can appoint a private attorney who previously represented the defendant. Wis. Stat. § 977.08(3)(e). During fiscal year 2018, around 40% of statewide indigent defense cases were assigned to SPD-appointed private counsel.[2]

When SPD finds a private attorney willing to serve as counsel for an indigent defendant, the attorney's compensation rate is fixed by statute. Wisconsin Stat. § 977.08(4m)(c) provides that the private attorney shall be paid $40 per hour for time spent on the case, and $25 per hour for travel in

---

[1] *Facts-At-A-Glance,* Wis. St. Public Defenders, https://wispd.org/index.php/about-the-spd/spd-facts-at-a-glance (Mar. 19, 2019).
[2] *Facts-At-A-Glance,* Wis. St. Public Defenders, https://wispd.org/index.php/about-the-spd/spd-facts-at-a-glance (Mar. 19, 2019).

limited categories. Private appointments also can be paid through fixed-fee contracts. Wis. Stat. § 977.08(3)(f). A small proportion—around 3% in fiscal year 2018—of all private appointments are paid using such contracts.[3]

It takes time to locate private counsel willing to accept representation of an indigent defendant. In counties where some Plaintiffs here reside (Ashland, Bayfield, and Iron), it takes SPD an average of 24 days and 39 contacts to find a private attorney willing to accept an appointment.[4] SPD has tried to speed the process up by redeploying SPD-employed staff attorneys and support staff to regions of heightened need and offering free training to private attorneys who accept appointments.[5]

When SPD has difficulty finding private attorneys willing to represent an indigent defendant, the state trial court has inherent authority to appoint counsel on its own. *See State v. Lehman*, 137 Wis. 2d 65, 68, 403 N.W.2d 438, 440 (1987). Court-appointed counsel can be compensated at a different rate than the statutory rate for SPD-appointed private counsel. *See State ex rel. Friedrich v. Circuit Court for Dane Cty.*, 192 Wis. 2d 1, 531 N.W.2d 32 (1995). Counties, not SPD or any other state-level entity, are obligated to pay

---

[3]     *Facts-At-A-Glance,*   Wis.    St.    Public    Defenders, https://wispd.org/index.php/about-the-spd/spd-facts-at-a-glance (Mar. 19, 2019).

[4]     *Letter from* Kelli S. Thompson to Clerk of the Supreme Court Sheila Reiff, at 4 (May 1, 2018), https://wicourts.gov/supreme/docs/1706commentsthompson.pdf.

[5]     *Id.*

5

court-appointed counsel. *See Carpenter v. Cty. of Dane*, 9 Wis. 274 (1859). The court-appointed compensation rate is now set at a floor of $70 per hour. Wis. S. Ct. Rule (SCR) 81.02(1). On January 1, 2020, that floor rate will increase to $100 per hour.[6]

## II.   Efforts are ongoing to raise compensation rates for private attorneys who represent indigent criminal defendants.

Each branch of Wisconsin state government has concluded that compensation should be increased for private defense counsel, and efforts continue to do so. The Wisconsin Supreme Court recently raised the compensation rate for court-appointed defense counsel set by SCR 81.02 from $70 to $100 per hour, effective January 1, 2020.[7] SPD has requested increases to compensation rates in each of its biennial budgets since 1995.[8] For the upcoming 2019–2021 budget, SPD requested a rate increase for SPD-appointed counsel to $70 per hour.[9]

The Wisconsin Legislature is now acting on that request. Republican legislators in the Wisconsin Assembly recently proposed a criminal justice

---

[6] Wis. S. Ct. Order 17-06, (issued June 27, 2018, eff. Jan 1, 2020), https://docs.legis.wisconsin.gov/misc/sco/311.pdf.

[7] Wis. S. Ct. Order 17-06, at 18–19.

[8] *See* Thompson, *Petition Comments*, at 4.

[9] *See* Criminal Justice Coalition, *2019–21 Biennial Budget Proposal*, at 3, http://www.thewheelerreport.com/wheeler_docs/files/123 criminaljusticecoalitionwhitepaper.pdf.

budget package that would implement SPD's recommendation and increase

rates for SPD-appointed attorneys to $70 per hour.[10] Governor Evers, State

---

[10] *See* LRB-1217, Section 20, at 11 (untitled bill), http://www.thewheelerreport.com/wheeler_docs/files/19lrb1217.pdf (last visited Mar. 19, 2019). *See also, Ricky Vetterkind, Assembly Republicans Call for $50 Million Criminal Justice Package,* Wis. St. J. (Feb. 19, 2019), https://madison.com/wsj/news/local/govt-and-politics/assembly-republicans-call-for-million-criminal-justice-package/article_0b315a71-c9a7-57a6-8558-33d8fcf8ad93.html. Press Release of State Assembly Leader Robin Vos, *Assembly Republicans Unveil Package of Criminal Justice Reforms*, Wis. St. Legislature (Feb. 18, 2019), http://legis.wisconsin.gov/assembly/63/vos/media/news-updates/assembly-republicans-unveil-package-of-criminal-justice-reforms/;
Press Release of State Representative John Nygren, *Criminal Justice Reforms* (Feb. 20, 2019), http://www.thewheelerreport.com/wheeler_docs/files/0220nygren.pdf; Press Release of State Representative Jim Steineke, *Northeastern Wisconsin Lawmakers Call for Criminal Justice Reform* (Feb. 18, 2019), http://legis.wisconsin.gov/assembly/05/steineke/news/northeast-wisconsin-lawmakers-call-for-criminal-justice-reform/; Press Release of State Representative Mary Felzkowski, *Rep. Felzkowski Calls for Criminal Justice Reform* (Feb. 18, 2019), http://legis.wisconsin.gov/assembly/35/felzkowski/media/1516/2019-02-18-rep-felzkowski-calls-for-criminal-justice-reform.pdf; State Representative Amy Loudenbeck, *Criminal Justice Reform Initiatives,* Wis. S. Legislature, http://legis.wisconsin.gov/assembly/31/loudenbeck/media/eupdates/2-25-19.html (last visited Mar. 19, 2019); Press Releases of State Representatives Loren Oldenburg, Tony Kurtz, Nancy VanderMeer, *Area Legislators Call for Criminal Justice Reform* (Feb. 18, 2019), http://www.thewheelerreport.com/wheeler_docs/files/0218kurtz.pdf; Press Release of State Representative Ron Tusler, *Rep. Tusler Announces Support for Community Safety Proposal* (Feb. 18, 2019), http://www.thewheelerreport.com/wheeler_docs/files/0218tusler.pdf; Press Release of State Representative Pat Snyder, *Central Wisconsin Legislators Call for Criminal Justice Reform* (Feb. 18, 2019), http://www.thewheelerreport.com/wheeler_docs/files/0218snyderupdate.pdf; Press Release of State Representative Mark Born, *Rep. Born Calls for Criminal Justice Reform* (Feb. 18, 2019), http://www.thewheelerreport.com/wheeler_docs/files/0218born.pdf; Press Release of State Representative Michael Schraa, *Northeast Wisconsin Lawmakers Call for Criminal Justice Reform* (Feb. 18, 2019), http://www.thewheelerreport.com/wheeler_docs/files/0218schraa.pdf; Press Release of State Representative David Steffen, *Northeast Wisconsin Lawmakers Call for*

Public Defender Kelli Thompson, and Chief Justice Roggensack of the Wisconsin Supreme Court all have signaled their support for the budget measure. Vetterkind*, supra.* Governor Evers has included the same rate increase supported by legislators in his own budget proposal.[11]

## III. Plaintiffs allege that Wisconsin's indigent defense system fails to meet minimum constitutional standards of representation.

Plaintiffs allege that Wisconsin's public defender system fails to satisfy its constitutional obligation to provide indigent defendants with effective representation. Three defendants are purportedly responsible: the State of Wisconsin, Governor Tony Evers, and State Public Defender Kelli Thompson, the latter two in their official capacities only. (Dkt. 10:3–4 ¶¶ 17–19.) Plaintiffs contend that "the State's failure to sufficiently fund the SPD or adequately compensate private attorneys for their time has deprived the Plaintiffs, and all those similarly situated, of . . . constitutionally-mandated rights." (Dkt. 10:10 ¶ 49.)

---

*Criminal Justice Reform* (Feb. 18, 2019), http://www.thewheelerreport.com/wheeler_docs/files/0218steffen_01.pdf; Press Release of State Reps. Jesse James, Warren Petryk, *Eau Claire Area Lawmakers Call for Criminal Justice Reforms in State Budget* (Feb. 18, 2019), http://www.thewheelerreport.com/wheeler_docs/files/0218james.pdf.

[11] 2019 Assembly Bill 56, § 2245, at 1091–92 https://docs.legis.wisconsin.gov/2019/related/proposals/ab56.pdf (last visited Mar. 19, 2019).

Plaintiffs' "inadequate funding" theory purportedly supports three claims: (1) that they are being deprived of their right to effective counsel under the Sixth Amendment and Article 1, Section 7 of the Wisconsin Constitution (Dkt. 10:22–23); (2) that the deprivation of effective counsel also violates their due process rights under the Fourteenth Amendment and Article 1, Section 8 of the Wisconsin Constitution (Dkt. 10:23); and (3) that the failure to "promptly appoint" counsel results in a denial of their speedy trial rights under the Sixth Amendment and Article 1, Section 7 of the Wisconsin Constitution (Dkt. 10:24). Plaintiffs assert their federal claims under 42 U.S.C. § 1983; their state causes of action arise directly under the Wisconsin Constitution.

## LEGAL STANDARD

"When reviewing a dismissal for lack of subject matter jurisdiction . . . a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (citation omitted). "[A] plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).

To survive a Rule 12(b)(6) challenge, a complaint must allege sufficient facts that, if true, "state a claim to relief that is plausible on its face." *Ashcroft*

*v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). Facial plausibility requires the plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, a complaint cannot survive with only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Adequately stating a claim "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

## ARGUMENT

### I.   This Court must abstain from exercising federal jurisdiction over Plaintiffs' challenge to Wisconsin's public defender system.

Under *Younger*, federal courts must dismiss equitable relief requests that would require them to reform and indefinitely audit state criminal proceedings. Plaintiffs ask for exactly that here—for this Court to fundamentally reform Wisconsin's public defender system and then audit state criminal proceedings for the foreseeable future. *Younger* thus requires dismissal, as federal courts have already held when dismissing similar systematic constitutional challenges to state public defender programs.

### A.   *Younger* and its progeny require federal courts to abstain from reforming state criminal proceedings.

In *Younger*, the Supreme Court enshrined the "longstanding public policy against federal court interference with state court proceedings." 401 U.S. at 43. *Younger*'s doctrine of judicial restraint "prevent[s] erosion of the role of

the jury and avoid[s] a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted." *Id.* at 44. *Younger* also promotes comity between the federal and state governments, resting on a "belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* To preserve this division between federal and state authority, *Younger* holds that injunctive and declaratory relief affecting the validity of state criminal prosecutions can be granted by federal courts only under exceptional circumstances. *Id.* at 53–54.

Soon after *Younger*, the Supreme Court in *O'Shea v. Littleton*, 414 U.S. 488 (1974) dismissed a system-wide challenge to state criminal proceedings that strongly resembles Plaintiffs' claims here. In *O'Shea*, state criminal defendants filed a § 1983 class action alleging that state court judges set their bond in an unconstitutional fashion and imposed discriminatory sentences on them. *Id.* at 490–92. To remedy the state officials' allegedly unconstitutional behavior, the plaintiffs sought injunctions. *Id.* at 492.

Although the *O'Shea* plaintiffs did not expressly target the validity of ongoing state criminal proceedings, the Supreme Court still held that *Younger* required dismissal. *O'Shea* described the improper equitable relief that the plaintiffs sought in a way that mirrors Plaintiffs' claims here:

> Respondents do not seek to strike down a single state statute, either on its face or as applied; nor do they seek to enjoin any criminal prosecutions that might be brought under a challenged criminal law. In fact, respondents apparently contemplate that prosecutions will be brought under seemingly valid state laws. *What they seek is an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials.*

*Id.* at 500 (emphasis added). *Younger* bars equitable relief like this because it would inevitably interfere with ongoing state criminal prosecutions:

> The order the Court of Appeals thought should be available if respondents proved their allegations would be operative only where permissible state prosecutions are pending against one or more of the beneficiaries of the injunction. Apparently the order would contemplate interruption of state proceedings to adjudicate assertions of noncompliance by petitioners. *This seems to us nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that Younger v. Harris . . . sought to prevent.*

*Id.* (emphasis added). The Supreme Court concluded that "[a] federal court should not intervene to establish the basis for future intervention that would be so intrusive and unworkable." *Id.*

The Supreme Court extended *Younger* and *O'Shea* to injunctions sought against state agencies in *Rizzo v. Goode*, 423 U.S. 362 (1976). There, the plaintiffs alleged that local Philadelphia law enforcement officials engaged in discriminatory practices and sought equitable relief to reform the city's citizen complaint system. The Supreme Court rejected the claim, expressing skepticism of a federal court "fashioning . . . prophylactic procedures for a state agency designed to minimize" alleged unconstitutional conduct. *Id.* at 378. It

emphasized again that "[w]here . . . the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *Id.* (citation omitted). The Supreme Court therefore held that *O'Shea*'s comity principles apply "where injunctive relief is sought, not against the judicial branch of the state government, but against those in charge of an executive branch of an agency of state or local governments." *Id.* at 380.

It remains true today that a core category of cases requiring abstention is "where federal jurisdiction would intrude into ongoing state criminal proceedings." *Mulholland v. Marion Cty. Election Bd.*, 746 F.3d 811, 815 (7th Cir. 2014) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013)).

## B. Federal courts abstain under *Younger* from considering systematic challenges to state public defender systems.

Federal courts have uniformly applied *Younger* to dismiss systematic constitutional challenges to the adequacy of state public defender systems. Such challenges share the same basic defect as the claims booted from federal court in *Younger*, *O'Shea*, and *Rizzo*—any relief that federal courts could grant against state public defender officials would substantially interfere with state criminal proceedings and disrupt comity between the federal and state governments.

The Fifth Circuit rejected one such challenge in *Gardner v. Luckey*, 500 F.2d 712, 713 (5th Cir. 1974). Convicted persons in Florida filed a civil class action against the state's public defender office alleging, like Plaintiffs do here, that the office "systematically failed to meet minimum constitutional standards" in representing indigent defendants due to "inadequate funding and excessive caseloads." *Id.* The plaintiffs sought declaratory and injunctive relief, for example by requiring a public defender to contact an accused indigent within 48 hours of the arrest. *Id.* The Fifth Circuit affirmed dismissal due to the case's "strong resemblance" to *O'Shea,* primarily because the plaintiffs "contemplate[d] exactly the sort of intrusive and unworkable supervision of state judicial processes condemned in *O'Shea.*" *Id.* at 715. Any injunctive relief necessarily would have "contemplate[d] interruption of state proceedings to adjudicate assertions of noncompliance." *Id.* The plaintiffs thus "[could not] get into federal court to make their sweeping challenge to the operation of the Florida Public Defender Offices." *Id.*[12]

The Eleventh Circuit rebuffed a similar systematic challenge in *Luckey v. Miller*, 976 F.2d 673 (11th Cir. 1992).[13] Like both *Gardner* and this case, the

---

[12] The court noted, however, that the individual plaintiffs could bring federal habeas corpus challenges after exhausting state remedies. *Id.*

[13] The Eleventh Circuit did not issue its own opinion, but instead affirmed on the basis of the district court's order. The quoted passages are from the district court's opinion.

*Luckey* plaintiffs alleged that Georgia's public defender system was "inherently incapable of providing constitutionally adequate services." *Id.* at 676. The plaintiffs sought systemic injunctive relief, including orders that counsel be provided at critical stages of the prosecution and "adequate" funding be furnished for both experts and public defense counsel. *Id.* The plaintiffs tried to distinguish *Younger*, arguing that they did "not seek to contest any criminal conviction, nor to restrain any criminal prosecution" but rather sought "only to have this Court consider systemic issues which cannot be raised in any individual case." *Id.* at 677. But the court looked under the surface of the plaintiffs' requested relief, concluding that "it is nonetheless clear that plaintiffs intend to restrain every indigent prosecution and contest every indigent conviction until the systemic improvements they seek are in place." *Id.* Any narrower relief also "would [have] inevitably set up the precise basis for future intervention condemned in *O'Shea*." *Id.* at 679. The court emphasized the significant "enforcement difficulties of any order reforming such an integral aspect of a state criminal justice process as the indigent defense system." *Id.*

Most recently, the Middle District of Louisiana dismissed a case nearly identical to this one in *Yarls v. Bunton*, 231 F. Supp. 3d 128 (M.D. La. 2017). There, arrestees sued New Orleans public defender officials, alleging that being placed on a waiting list for appointed counsel violated their

constitutional rights. *Id.* at 129. They sought both declaratory and injunctive relief—they primarily sought an injunction directing officials to report the status of waiting lists, and also for the district court to "retain jurisdiction to monitor and enforce compliance with this judgment and other ancillary matters that arise." *Id.* at 130.

The court identified major problems with considering such a case in federal court. First, the court expressed "concern[] with whether it would be acting beyond the bounds of its Article III power in entertaining a dispute that was not a typical case or controversy, but rather, an attempt to remedy the undisputed inadequacies of a state funding system." *Id.* Similarly, the court "was concerned with the myriad comity issues that would result were [the] [c]ourt to issue injunctive relief against members of the state judiciary and public defender offices or the public defender board." *Id.*

The court concluded that it had to abstain from considering the plaintiffs' claims, citing *Younger*, *O'Shea*, *Gardner*, and *Luckey*. Any injunctive relief would have presented an unworkable "ongoing audit of the criminal cases in Orleans Parish," the exact *O'Shea* enforcement problem that required dismissal of systematic public defender challenges in *Gardner* and *Luckey*. *Id.* at 136.

16

**C.    *Younger* requires this case to be dismissed.**

Plaintiffs' claims here are not meaningfully different from those dismissed in *Gardner*, *Luckey*, and *Yarls*. Like those systematic challenges to state public defender systems, Plaintiffs here seek to "remedy the State of Wisconsin's failure to provide constitutionally required, effective legal representation to indigent people accused of crimes . . . ." (Dkt. 10:1–2 ¶ 1.) And like in those cases, they seek intrusive injunctive and declaratory relief against various state entities and officials, asking this Court to:

> D) Enjoin the State from continuing to violate the rights of indigent defendants by providing constitutionally deficient representation;
>
> E) Enter an injunction requiring the State to propose, for this Court's approval and monitoring, a plan to develop and implement a statewide system of public defense that is consistent with the U.S. Constitution and the Constitution and laws of the State of Wisconsin;
>
> F) Enter an injunction that requires the State to propose, for this Court's approval and monitoring, uniform workload and performance for attorneys representing indigent criminal defendants in the State of Wisconsin in order to ensure accountability and to monitor effectiveness;
>
> G) Enter an injunction establishing minimum standards of courtroom experience or mentorship that must be met before attorneys may be certified to represent indigent criminal defendants;
>
> H) Enter an injunction banning the use of fixed-fee contracts in the delivery of indigent defense services in the State of Wisconsin;

(Dkt. 10:25.) These requests ask this Court to fundamentally reform the entire public defense system in Wisconsin and then monitor Defendants' compliance with the injunction for the indefinite future.

The breathtaking scope of such an injunction would intrude into Wisconsin's administration of its criminal justice system at least as much as the claims dismissed in *Gardner*, *Luckey*, and *Yarls*. In *Gardner*, the plaintiffs asked the federal court to order that, among other things, a public defender had to consult with an accused indigent within 48 hours of arrest, and that the Florida public defender office be enjoined from representing indigents unless certain other requested standards were met. 500 F.2d at 713. Plaintiffs' injunction requests here go far beyond immediate consultation. Both the *Luckey* and *Yarls* plaintiffs sought even narrower relief, including reporting requirements and a declaratory judgment, but still failed to avoid *Younger*. 976 F.2d at 678; 231 F. Supp. 3d at 129–30. Plaintiffs here seek much more than just reporting and a declaratory judgment; they request a comprehensive overhaul of state public defense practices in Wisconsin.

Plaintiffs' request for declaratory relief is equally indistinguishable from *Gardner*, *Luckey*, and *Yarls*. They ask this Court to:

> B) Declare that the State of Wisconsin is obligated to provide constitutionally adequate representation to indigent criminal defendants; [and]
>
> C) Declare that the constitutional rights of Wisconsin's indigent criminal defendants are being violated by the State on an ongoing basis, and provide a deadline for the State to move this Court for approval of specific modifications to the structure and operation of the State's indigent defense system . . . .

(Dkt. 10:25.) The plaintiffs in those other cases also asked the federal court to declare that their respective state public defender system did not comply with constitutional requirements; each request was dismissed. *See Gardner*, 500 F.2d at 713; *Luckey*, 976 F.2d at 678; *Yarls*, 231 F. Supp. 3d at 129.

*Younger*, *O'Shea*, and *Rizzo* require dismissal of this case for the same reasons as these other challenges to states' public defender systems. Comprehensively reforming Wisconsin's public defender system in federal court would violate *Younger*'s "longstanding public policy against federal court interference with state court proceedings." 401 U.S. at 43. The indefinite monitoring they request is exactly the "ongoing federal audit of state criminal proceedings" rejected in *O'Shea*, 414 U.S. at 500. And any injunctive relief would require this Court to "fashion[] . . . prophylactic procedures for a state agency designed to minimize" instances of alleged unconstitutional conduct, the same relief rejected in *Rizzo*, 423 U.S. at 378.

Moreover, federal court intervention could disrupt the progress Wisconsin is making toward raising the compensation rates about which Plaintiffs complain. As discussed above in Background II, SPD has requested funding increases in its current budget request, and the past two months have seen significant progress toward a legislative solution. Legislators have proposed to almost double the current compensation rate from $40 to $70 per hour, a proposal that Governor Evers has included in his own budget proposal.

19

It is impossible to predict how ongoing federal litigation in this Court could impact this delicate legislative process, especially given divided control over state government. This is precisely the scenario in which *Younger* abstention is appropriate.

## II. This Court lacks jurisdiction over Plaintiffs' claims due to the Eleventh Amendment, a lack of Article III standing, and *Heck*.

Even if *Younger* did not require this Court to abstain from exercising its jurisdiction, other absolute bars to federal jurisdiction require dismissal. First, the Eleventh Amendment grants Defendants immunity from being sued in federal court. Second, Plaintiffs lack Article III standing to assert their claims, both because Defendants neither caused nor can redress Plaintiffs' alleged injuries, and because Plaintiffs did not suffer all the injuries about which they complain. Third, since Plaintiffs' ineffective assistance of counsel and speedy trial claims would imply the invalidity of state criminal convictions, *Heck* imposes yet another bar to federal court jurisdiction.

### A. The Eleventh Amendment prevents a federal court from hearing Plaintiffs' claims.

The State of Wisconsin enjoys immunity from suit in federal court under the Eleventh Amendment, and no exceptions to that immunity apply here. Although state officials sometimes can be sued for prospective equitable relief in lieu of the State, Plaintiffs' threadbare allegations here fail to state such a claim against either Governor Evers or State Public Defender Thompson.

Moreover, an absolute Eleventh Amendment bar prevents this Court from considering Plaintiffs' claims against state officials based on state law.

### 1. Defendants enjoy Eleventh Amendment immunity from suit in federal court.

#### a. State of Wisconsin

Plaintiffs name the State of Wisconsin as a defendant (Dkt. 10:3–4 ¶ 17), but the State enjoys sovereign immunity and cannot be sued in federal court. The Eleventh Amendment provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "[T]he Eleventh Amendment guarantees that 'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'" *Bd. Of Regents of Univ. Of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 457 (7th Cir. 2011) (quoting *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)).

No exceptions to this general rule of immunity apply here. Although Congress may abrogate a state's sovereign immunity through appropriate legislation, *id.* at 457–58, it did not do so through 42 U.S.C. § 1983, Plaintiffs' only federal cause of action. (Dkt. 10:22–23.) "The Supreme Court has expressly held that Congress has not abrogated the states' immunity in § 1983

suits." *Joseph v. Bd. of Regents of Univ. of Wisconsin Sys.*, 432 F.3d 746, 748 (7th Cir. 2005) (citing *Quern v. Jordan*, 440 U.S. 332, 341–45 (1979)). Likewise, states may waive their sovereign immunity by consenting to federal jurisdiction, *Bd. of Regents*, 653 F.3d at 458, but the State of Wisconsin has not done so here. All claims against it must be dismissed.

### b.    Governor Evers

Plaintiffs' claims against Governor Evers (Dkt. 10:4 ¶ 18) must be dismissed because he also enjoys sovereign immunity. The main exception to a state's Eleventh Amendment immunity can be found in *Ex parte Young*, 209 U.S. 123, 159–60 (1908), which permits a plaintiff to file "suit[] against state officials seeking prospective equitable relief for ongoing violations of federal law . . . ." *Darne v. Wis. Dep't of Revenue*, 137 F.3d 484, 488 (7th Cir. 1998). But *Ex parte Young* does not apply unless the sued official "[has] some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Id.* at 157. Here, Governor Evers is merely named as a "representative of the state" and thus is not a proper *Ex parte Young* defendant.

The Eighth Circuit recently dismissed very similar claims against Missouri's governor based on Missouri's public defender system, in *Church v. Missouri*, 913 F.3d 736 (8th Cir. 2019). There, like here, the plaintiffs alleged

that Missouri had "failed to meet its constitutional obligation to provide indigent defendants with meaningful representation." *Id.* at 741. The court rejected three bases for finding an adequate *Ex parte Young* connection between Missouri's governor and its public defender system. First, the governor's general law enforcement authority did not suffice, since the governor had no direct enforcement authority over the state's public defenders. *Id.* at 748–50. Second, the Missouri governor's role in appointing members of a commission overseeing its public defenders did not suffice, because selecting officials to execute a program does not amount to the direct enforcement required for an *Ex parte Young* claim. *Church*, 913 F.3d at 750. Third, the Missouri governor's decision to withhold appropriated funds from the public defense system also did not suffice, because that was a legislative act immune to challenge. *Id.* at 750–54.

Plaintiffs' complaint here falls even shorter than the arguments the Eighth Circuit rejected in *Church*. The complaint mentions Governor Evers only once, when naming him as a defendant. (Dkt. 10:4 ¶ 18.) Nowhere does the complaint state any allegations regarding Governor Evers' involvement in Wisconsin's public defender system. Without such allegations, Plaintiffs have no basis for arguing that Governor Evers has the requisite enforcement authority over Wisconsin's public defender system under *Ex parte Young*. The claims against him should be dismissed.

### c.   Kelli Thompson

Although Kelli Thompson is the Wisconsin State Public Defender, the current claims against her also do not satisfy the *Ex parte Young* exception and must be dismissed, too. Just as with Governor Evers, Plaintiffs' complaint does not contain a single factual allegation about Thompson's responsibility for the alleged problems about which Plaintiffs complain. It only names her as a defendant (Dkt. 10:4 ¶ 19) and cites a petition she submitted to the Wisconsin Supreme Court regarding public defender appointment rates (Dkt. 10). That does not suffice to name her as an *Ex parte Young* defendant.

Of course, Thompson has certain powers and duties regarding Wisconsin's public defender system as its executive officer. *See generally* Wis. Stat. § 977.05. But the key inquiry under *Ex parte Young* is whether Thompson has "some connection" to the specific aspects of the system that Plaintiffs allege violate criminal defendants' constitutional rights. This is not a technical pleading failure. Plaintiffs' main complaint is that SPD-appointed private attorneys are not adequately compensated, which allegedly leads to a denial of indigent defendants' constitutional rights. (*E.g.* Dkt. 10:6–7 ¶¶ 29–34.) But Thompson cannot set those compensation rates. Wisconsin Stat. § 977.08(4m)(c) fixes the rate for SPD-appointed defense counsel at $40 per hour. Thompson has no authority to alter that rate.

As for other representational problems that Plaintiffs allege (*see* Dkt. 10:10 ¶¶ 47–48), it is unclear whether Plaintiffs allege that those stem from compensation rates, other funding problems, or some other unarticulated theory. In any event, no facts alleged in Plaintiffs' complaint connect Thompson to these problems, either.

Perhaps Plaintiffs could cure this problem, but perhaps not. Right now, though, Plaintiffs' current allegations do not satisfy the *Ex parte Young* exception to Eleventh Amendment immunity with respect to Thompson. The claims against her also must be dismissed.

### 2. The Eleventh Amendment requires dismissal of Plaintiffs' state law claims.

The Eleventh Amendment also requires dismissal of Plaintiffs' state law claims. In *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984), the Supreme Court held that "*Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law." It reasoned that:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.

*Id* at 90. The Seventh Circuit recently reiterated this principle, explaining that "the Eleventh Amendment prohibits a federal court from ordering any relief

against a state agency based on state law." *EOR Energy LLC v. Illinois EPA*, 913 F.3d 660, 664 (7th Cir. 2019).

Plaintiffs' state law claims here fall squarely within this prohibition. They assert three claims purportedly arising under the Wisconsin Constitution. (Dkt. 10:22–24.) Because they request a federal court to order relief against the State and state officials based on alleged violations of state law, *Pennhurst* requires those claims to be dismissed.

## B.   Plaintiffs' claims must be dismissed because they lack Article III standing.

Plaintiffs face another jurisdictional roadblock: Article III standing. "The jurisdiction of federal courts is limited to 'Cases' and 'Controversies' as described in Article III, Section 2 of the Constitution. There is no case or controversy if the plaintiff lacks standing to challenge the defendant's alleged misconduct." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 587–88 (7th Cir. 2016) (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992)). To confer standing a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). As the party invoking federal jurisdiction, Plaintiffs have the burden to establish Article III standing. *Lujan*, 504 U.S. at 561.

### 1. Defendants neither caused nor can redress Plaintiffs' alleged injuries.

Plaintiffs lack standing because Defendants neither caused nor can redress the alleged problems with Wisconsin's public defender system. According to Plaintiffs, two problems with the public defender system violate their constitutional rights: (1) the delay in obtaining counsel (Dkt. 10:6 ¶¶ 36–37); and (2) the quality of representation they receive, once counsel is appointed (Dkt. 10:10 ¶¶ 47–48). The root cause of both problems, in their view, is a lack of adequate funding: "[T]he State's failure to sufficiently fund the SPD or adequately compensate private attorneys for their time has deprived the Plaintiffs, and all those similarly situated, of these constitutionally mandated rights." (Dkt. 10:10 ¶ 49.)

But Defendants have no power over funding for the Wisconsin public defender system. Again, Wis. Stat § 977.08(4m)(c) fixes the rate for SPD-appointed defense counsel at $40 per hour. And under the Wisconsin Constitution, "[n]o money shall be paid out of the treasury except in pursuance of an appropriation by law." Wis. Const. art. VIII, § 2. Neither Governor Evers nor Kelli Thompson can amend Wis. Stat. § 977.08(4m)(c) or otherwise appropriate money to the SPD.

Without causation or a redressable injury, Plaintiffs lack standing and their claims must be dismissed.

27

### 2. Plaintiffs lack standing to challenge aspects of the public defender program that have not allegedly harmed them.

Plaintiffs also lack Article III standing in another sense: they have not personally suffered all the injuries about which they complain. Claims based on purported injuries that Wisconsin's public defender system did not inflict on them must be dismissed.

*Lewis v. Casey*, 518 U.S. 343 (1996) illustrates how this standing principle can preclude broad challenges to state programs. There, a class of inmates sued the Arizona Department of Corrections (ADOC), alleging that various aspects of ADOC's practices denied them meaningful access to the courts and thus violated their constitutional rights. *Id.* at 346–47. The district court found liability and imposed a sweeping injunction that reformed many aspects of ADOC's law library and legal assistance practices. For instance, the injunction reformed legal services for illiterate inmates, non-English speaking inmates, inmates in lockdown, and those for inmates at large. *Id.* at 358.

The Supreme Court reversed, finding that the plaintiffs lacked standing to obtain system-wide relief. Because the district court found that the plaintiffs only suffered injury due to ADOC's policies regarding illiterate inmates, relief targeted at other policies thus went too far:

> [S]tanding is not dispensed in gross. If the right to complain of one administrative deficiency automatically conferred the right to complain of all administrative deficiencies, any citizen aggrieved in one respect

could bring the whole structure of state administration before the courts
for review. That is of course not the law.

*Id.* at 357–358, 358 n.6; *see also Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."). The Seventh Circuit has applied this principle to dismiss similar claims where the plaintiffs challenged aspects of a government program that had not allegedly caused them harm. *See Johnson v. U.S. Office of Pers. Mgmt.*, 783 F.3d 655, 661–63 (7th Cir. 2015) (dismissing aspects of challenge to federal health insurance program that plaintiffs did not allege harmed them); *Mueller v. Raemisch*, 740 F.3d 1128, 1132–33 (7th Cir. 2014) (holding that plaintiffs lacked standing to challenge aspects of sex offender regulations that did not threaten to harm them).

Certain of Plaintiffs' claims share the same standing defect as in *Lewis*. According to their allegations, they all have only suffered harm in the form of waiting for counsel to be appointed and the harms that wait caused. (Dkt. 10:12 ¶ 58 (Bender); 13 ¶ 64 (Stroebel); 13 ¶ 69 (White); 14 ¶ 74 (Holman); 14 ¶ 79 (Cadotte); 15 ¶ 85 (Elmore); 15–16 ¶¶ 89–90 (Hankins); 16 ¶ 95 (Hansen); 17 ¶ 101 (Mason); 17 ¶ 106 (Lor); 18 ¶ 111 (Swiggum); 18 ¶ 117 (Taylor).) Under

*Lewis*, Plaintiffs can only meet Article III's injury requirement for claims based on those alleged harms.

But the harms alleged in Plaintiffs' complaint go well beyond wait times for counsel. They allege that indigent defendants are appointed inadequate SPD counsel for special appearances. (Dkt. 10:9 ¶ 46.) They allege that indigent defendants cannot easily communicate with their attorneys. (Dkt. 10:10 ¶ 47.) They allege that appointed counsel do not have enough funding to adequately represent indigent defendants. (Dkt. 10:10 ¶ 47.) And they allege that appointed counsel receive inadequate training by SPD. (Dkt. 10:10 ¶ 48.) Conspicuously absent, though, are any allegations that Plaintiffs themselves have suffered any of these harms. Claims based on those harms therefore must be dismissed because Plaintiffs lack standing to assert them under *Lewis*.

C.    ***Heck* requires Plaintiffs' claims to be dismissed because, if successful, they would imply the invalidity of state criminal convictions.**

The last jurisdictional bar to Plaintiffs' claims arises from *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* provides that civil claims "that would 'necessarily imply' the invalidity of the fact of an inmate's conviction . . . [are] not cognizable under § 1983 unless and until the inmate obtains favorable termination of a state, or federal habeas, challenge to his conviction or sentence." *Nelson v. Campbell*, 541 U.S. 637, 646 (2004) (citing *Heck*, 512 U.S. at 487). The rule applies "no matter the relief sought" and "no matter the target

of the prisoner's suit." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005). Similarly, if the alleged unconstitutional conduct would invalidate the underlying conviction, *Heck* bars the claim "even if [the plaintiff] does not seek relief from the fact or duration of confinement." *Grier v. Klem*, 591 F.3d 672, 677 (3d Cir. 2010).

As with *Younger*, federal courts have applied *Heck* to dismiss challenges to state public defender systems. In *Thomas v. Jones*, 428 F. App'x 122, 123–24, 2011 WL 1892112, at *1 (3d Cir. 2011) (per curiam), the plaintiff was convicted and later filed a § 1983 claim against local officials alleging that his public defender was paid an inadequate fee and did not have enough funding to perform an adequate pretrial investigation. *Heck* barred his damages claim, since it would have required a finding that he received ineffective assistance of counsel—a holding that would have "necessarily impl[ied] the invalidity of his conviction." *Id.* Likewise, in *Williams v. Weber County*, 562 F. App'x 621, 2014 WL 1424510, at *1 (10th Cir. 2014), the plaintiffs were criminal defendants who pleaded guilty after receiving appointed defense counsel. They sued local officials, again arguing that the indigent defense program failed to meet minimum constitutional standards. *Id. Heck* barred these claims, too, since they amounted to ineffective assistance of counsel claims that, if successful, would have rendered the plaintiffs' guilty pleas invalid. *Id.* at *2.

Plaintiffs' claims here also implicate the validity of their ongoing criminal proceedings. They allege that "[t]he State's excessive delay in appointing legal counsel violates [the] constitutionally guaranteed right" to a speedy trial. (Dkt. 10:4 ¶ 23.) Any victory on this argument could invalidate a plaintiff's subsequent criminal conviction under the Sixth Amendment and *Barker v. Wingo*, 407 U.S. 514 (1972). Likewise, Plaintiffs allege that indigent defendants in Wisconsin "are simply not being promptly appointed the effective legal counsel mandated by the United States and Wisconsin Constitutions." (Dkt. 10:5 ¶ 25.) As *Thomas* and *Williams* noted, any finding that Plaintiffs have received ineffective assistance of counsel would necessarily imply the invalidity of any subsequent criminal conviction under *Strickland v. Washington*, 466 U.S. 668 (1984).[14]

Because Plaintiffs cannot prevail on their civil claims without holdings that would necessarily imply the invalidity of state criminal convictions, *Heck* requires their claims to be dismissed.

---

[14] This paragraph assumes arguendo that Plaintiffs could even state a *Strickland*-like or *Barker*-like claim here. Defendants do not concede that such a claim is available but do not raise the argument at this stage.

### III.   Plaintiffs fail to state a claim for damages.

Plaintiffs also request damages for their alleged injuries. (Dkt. 10:26 ¶ I.) Assuming Plaintiffs could evade both *Younger* and the jurisdictional barriers discussed above, their claim for damages is barred.

### A.   Defendants are not "persons" under 42 U.S.C. § 1983 for purposes of damages claims.

It is black-letter law that "Section 1983 does not authorize awards of damages against states, and a state official (in his official capacity) is the state." *Fritz v. Evers*, 907 F.3d 531, 533 (7th Cir. 2018). That is because 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." The Supreme Court held in *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989) that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."

Plaintiffs' only federal claims are those under 42 U.S.C. § 1983 against the State of Wisconsin and Governor Evers and State Public Defender Thompson in their official capacities. (Dkt. 10:3–4 ¶¶ 17–19; 10:22–24.) Under *Will*, § 1983 does not permit damages claims against these defendants. Those claims must be dismissed.

**B.    Plaintiffs identify no state cause of action for damages.**

None of Plaintiffs' state law claims permit them to recover damages, either. First, the State of Wisconsin enjoys sovereign immunity to state law claims in its courts, unless the Wisconsin Legislature has expressly abrogated that immunity by statute. *Lister v. Bd. of Regents of Univ. Wis. Sys.*, 72 Wis. 2d 282, 294, 240 N.W.2d 610 (1976). Second, public officers are afforded immunity to personal liability for damages when performing their official functions. *Id.* at 298–99.

Plaintiffs only assert state law claims arising directly under the Wisconsin Constitution, specifically art. I, §§ 7–8. (Dkt. 10:22–24.) They identify no statutes that provide a damages cause of action against either the State of Wisconsin or state officials for violating those constitutional provisions. And no Wisconsin court has ever held that those constitutional provisions themselves can support any kind of damages action. Accordingly, default immunity principles apply and preclude damages against Defendants on any state law claim.

*      *      *

Although Plaintiffs' claims have various fatal defects, they all can be traced back to one main problem: claims seeking to systematically reform Wisconsin's public defender system do not belong in federal court. By asking a federal court to restructure an institution woven into the fabric of Wisconsin's

criminal justice system, Plaintiffs' claims threaten *Younger*'s aim of promoting comity between the federal and state governments. Federal courts have wisely dismissed similar claims for this reason, and this Court should do the same.

## CONCLUSION

Plaintiffs' amended complaint should be dismissed.

Dated this 19th day of March, 2019.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/ Colin T. Roth
COLIN T. ROTH
Assistant Attorney General
State Bar #1103985

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-6219
(608) 267-2223 (Fax)
rothct@doj.state.wi.us

## CERTIFICATE OF SERVICE

I certify that on March 19, 2019, I electronically filed the foregoing *Defendants' Motion to Dismiss and Memorandum of Law in Support of Motion to Dismiss* with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 19th day of March 2019.


Electronically signed by:

s/ Colin T. Roth
COLIN T. ROTH
Assistant Attorney General